MATHEWS, Justice.
This is an appeal from a filial decree in a suit brought under the provisions of F.S. Chapter 87, F.S.A., providing for declaratory decrees. The final decree, among other things, contained the following:
“It is further Ordered that all rules,' regulation's and policies under which the defendant, State Department of Public Welfare, a corporation, is administering the social welfare act, Chapter 26937, Laws of Florida, Acts of 1951 [F.S.A. § 409.01 et seq.], including the rule or regulation attached to and made a part of the bill of complaint, under and by which said rules, regulations or policies the said defendant, State Department of Public Welfare, a corporation, is allowing up to $12.00 per month to recipients under said Act of public assistance for prescriptive medicines, when purchased by recipients under prescriptions only when written by medical or Osteopathic doctors, are discriminatory, arbitrary and invalid insofar as they exclude payment to recipients for. medicines under prescriptions written and furnished by Naturopathic physicians. The said defendant, State Department of Public Welfare; a corporation, is hereby specifically enjoined and restrained from continuing thi . arbitrary discrimination against Natui ipathic physicians, and is hereby requi? d to recognize and pay to recipients of public assistance, moneys for prescriptive medicines when written by Naturopathic physicians-in the same manner and to the same extent as it recognizes, honors, and pays for same when written by medical doctors or Osteopaths.
“It is further Ordered that in the administration of said social welfare act, the said defendant, State Department of Public Welfare, a corporation, is hereby further enjoined and prohibited from refusing to accept and recognize certificates of Naturopathic physicians in- any and all matters wherein Chapter C5937, Laws of Florida, Acts of 1951, provide for examinations and certificates by'physicians or doctors, and said defendant is hereby required to honor certificates and pay for all services authorized by said act, or any rule or regulation, when rendered by Naturopaths within their authorized field of practice under Florida law, to the same extent 'as when rendered by medical doctors or Osteopaths.”
Prior to the final decree the Chancellor rendered an opinion, which appears to be the basis of his final decree. In the opinion he stated:
“ * * * By action of the Legislature the plaintiff in this case is a ‘physician’ and entitled to act as such ■in. prescribing medicines, which prescriptions shall be honored by the defendant or other similar welfare agencies. When such agencies are of the opinion that in particular instances the prescriptions or services of a naturo-pathic physician are not completely adequate or satisfactory, then another or different type of physician can be called in, but the agencies cannot arbitrarily exclude all naturopathic physicians from their legal rights to serve members of the public and to be accorded at the hands of such agencies equal treatment with practitioners of other schools insofar as the field of their practice is concerned.”
It will, therefore, be noted that the Chancellor placed great significance upon the word “physician” and bottomed his opinion and final decree upon the definition of this word “physician” contained in the statutes. This definition is given in subsection (2) of Section 1 of Chapter 16087, Laws of Florida 1933, F.S.A. § 398.01 et seq., which was “An Act to regulate the manufacture, sale, possession, control, prescribing, administering, dispensing, compounding, mixing, culti-. vation and growth of narcotic drugs in the State of Florida, to define certain words and phrases as used in this Act * * *.”
The title of F.S. Chapter 398, F.S.A., is: “Uniform Narcotic Drug Law”.
*349 F.S. Section 398.01, F.S.A., is as follows :
“This chapter may be cited as the uniform narcotic drug law.”
F.S. Section 398.02(1), F.S.A., which is a part of the “Uniform Narcotic Drug Law”, is as follows:
“(1) ‘Physician’ means a person authorized by law to practice medicine in this state and any other person authorized by law to treat sick and injured human beings in this state and to use, mix or otherwise prepare narcotic drugs in connection with such treatment.” (Emphasis supplied.)
In order for a naturopathic practitioner to be a “physician” for the purpose of prescribing narcotic drugs, he must be: first, “a person authorized by law to practice medicine in this state”; and if he is not authorized to practice medicine; then second, “any other person authorized .by law to treat sick and injured human beings in this 'state”; and in addition to being such a person above mentioned in the first or second classification, he must also be; third, authorized by law “to use, mix or otherwise prepare narcotic drugs in connection with such treatment.”
F.S. Section 462.01, F.S.A., defines “naturopathy” as follows:
“For the purpose of this law natureo-pathy and naturopathy shall be construed as synonymous terms and are hereby defined to mean the use and practice of psychological, mechanical and material health sciences to aid in purifying, cleansing and normalising human tissues for the preservation or restoration of health, according to the fundamental principles of anatomy, physiology and applied psychology, as may be required. Naturopathic practice employs, among other agencies, phytotherapy, dietetics, psychotherapy, suggesto-therapy, hydrotherapy, zone therapy, bio-chemistry, external applications, electro-therapy, mecháno-therapy, mechanical and electrical appliances, hygiene, first aid, sanitation and helio-therapy * ' * (Emphasis supplied.)
In order to eliminate any doubt as to what a “naturopathic” practitioner could not do, the Statute 462.01, further provides:
“ * * * that nothing in this chapter shall be held or construed to authorize any naturopathic physician licensed hereunder to practice materia medica or surgery or chiropractic, nor shall the provisions of this law in any manner apply to or affect the practice of osteopathy, chiropractic, Christian science, or any other treatment authorized and provided for by law for the cure or prevention of disease and ailments.” (Emphasis supplied.) ■
It should be observed that a naturo-pathic practitioner may use psychological, mechanical and material health sciences to aid in purifying', cleansing and normalising human tissues for the preservation or restoration of health. He is not authorized “to practice medicine” or “to practice ma-teria medica or surgery or chiropractic”. He is authorized “to treat sick and injured human beings” — “only for the purpose of purifying, - cleansing and normalizing human tissues,” and in so doing is limited -to the use and practice of “psychological, mechanical 'and material health sciences.” To use, mix or- otherwise -prepare narcotic drugs is directly connected with the practice- of materia medica or surgery or chiropractic, and therefore, one licensed' to engage in the practice of naturopathy under the Act is not authorized to use, mix or otherwise prepare narcotic drugs.
In a well reasoned opinion in the case of Perry v. Larson, 5 Cir., 104 F.2d 728, 730, which construed the Florida “Uniform Narcotic Drug Law”, it was held that a naturopath was not authorized to prescribe narcotic drugs. In that opinion Judge Sib-ley, speaking for the United States Court of Appeals for the Fifth Circuit, said:
“But it is argued that the statute expressly allows phytotherapy, which means the use of plants to heal, and that these ’ narcotics are derived from *350 poppy plants and cola leaves. But so are aconite and belladonna, also powerful drugs, derived from plants. Although such drugs are of plant origin, their prescription is not the phytother-apy meant, but is the use of materia medica reserved to the practitioner of medicine and denied to the naturopathic practitioner. The medical terms used in the statute in describing na-turopathy are strange to common speech, and the proviso which follows and limits them must be given controlling effect. ‘The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview.’ ”
We are not unmindful of the affirmance by the Court without opinion of the case of In re Complaint of Melser, 160 Fla. 333, 32 So.2d 742, in which case the Circuit Judge had held that a licensed naturopathic practitioner may prescribe narcotic drugs. Chapter 398, Florida Statutes, F.S.A., should be construed as a whole and not by isolated sections. It does not appear from the records on file in this Court in the case of In re Complaint of Melser, supra, that Sections 398.04 or 398.08, Florida Statutes, F.S.A., were called to the attention of the Circuit Court or this Court, or were considered in the opinion in that case. The prohibition contained in 'Section 398.04 that “No person shall manufacture, compound, mix * * * narcotic drugs” without a license so to do is expressly stated to be not applicable to “a registered physician, dentist or veterinarian in the course of his professional practice”. Section 398.08 specifically names those who “may prescribe * * * narcotic drugs,” and a naturopath is not one so named. Section 398.03 reads as follows: “It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter.” A naturopath is not one authorized to manufacture, mix, compound or prescribe narcotic drugs in said Chapter 398. Wherever the opinion in In re Complaint of Melser, supra, may be considered to be in conflict with this opinion, the same is specifically receded from.
The doctrine of stare decisis does not apply in this case. In the case of State ex rel. Helseth v. Du Bose, 99 Fla. 812, 128 So. 4, 6, in an opinion by Mr. Justice Terrell, this Court said:
“* * * It is not out of place to say in this connection that no decision is authority on any question not raised and considered, although it may be involved in the facts of the case.”
In the case of State ex rel. Garland v. City of West Palm Beach, 141 Fla. 244, 193 So. 297, 298, in an opinion by Mr. Justice Terrell, the Court said:
“We were not unmindful of our holding in these cases when we promulgated our opinion in this case which we do not consider to be in conflict with the last cited cases. For one case to have the effect of overruling another, the same questions must be involved; they must be affected by a like state of facts and a conclusion must be reached in hopeless conflict with that in the former case.”
In 21 C.J.S., Courts, § 186(c), p. 299 of the text, the author says:
“c. Decision without Full Argument of Point — A decision is, generally, not a precedent as to a point which was not sufficiently argued and presented to the court, although if the point was an essential one the fact that it was duly presented and considered may be presumed. An affirmance without an opinion is not an approval of the opinion of the lower court; and an af-firmance by consent of parties creates no binding precedent.
*****
“An affirmance without an opinion is an approval only of the point decided or result reached by the court below, *351 and not of the opinion and the conclusions of law of the lower court, so as to establish a precedent for future action.”
We hold in this case:
(1) That there is nothing in Section 398.02(1) F.S., as construed in connection with F.S., Section 462.01 F.S.A., that confers any power upon a licensed naturopathic practitioner to prescribe narcotic drugs. To hold otherwise would completely nullify F.S. Section 398.08, F.S.A. This section is a part of the “Uniform Narcotic Drug Law” and it specifically named the persons who “may prescribe, administer, dispense, mix, or otherwise prepare narcotic drugs” in the course of his professional practice to be: (1) a physician or a dentist, (2) a veterinarian, and (3) any person who has obtained from a physician, dentist, or veterinarian any narcotic drug for administration to a patient during the absence of such physician, dentist, or veterinarian. The doctrine of inclusio unius est exclusio alterius applies to the “Uniform Narcotic Drug Law.”
(2) Even if the definition of the word “physician” contained in F.S. Section 398.-02, F.S.A., could be construed as authorizing the appellee to prescribe narcotic drugs, such word has reference only to the “Uniform Narcotic Drug Law,” and not so as to classify appellee as a “physician”'for the practice of materia medica or surgery or chiropractic, or as a “physician” for all purposes.
As an example of a duty imposed by law upon the appellant in this case, Section 15 of Chapter 26937, Laws of Florida 1951, F. S.A., provides for assistance to dependent children. Subsection (2) of Section 15 of. Chapter 26937, Laws of Florida 1951, F.S. A., provides as follows:
“Provided, however, that if aid to dependent children shall be claimed or applied for on the ground of physical or mental disability of parent or other person liable for the support of the dependent child, such aid shall not be granted unless the parent or other per.son liable for the support of the1 child be examined by a physician and a certificate of disability shall be signed by said physician and filed with the department. Where such physician certifies to the disability of the parent or other person liable for the support of the dependent child, re-examination as to disability shall be made annually, if said disability is not obvious, and aid to the dependent child shall be discontinued if at any such examination a physician shall certify that the parent or other person liable for support of the child is able to provide such support.”
With reference to payments for medical services as to dependent children and to the aged, the law makes no provision for payment for such services. The appellant does prepare a budget in the exercise of its discretion setting forth the needs of recipients, which budget may include items for clothes, groceries, shelter, drugs, dental, surgical or medical services. The appellant makes no payment whatsoever directly to the grocer, the butcher, the drug store, the ’dentist, surgeon, physician, or the clothing store. The payment is made to the recipient. If the recipient is dissatisfied, he or she has the right of appeal and to have a fair hearing. This is not a complaint from a recipient. The statute with reference to naturopathy, F.S. Section 462.01, F.S.A., among other things, provides:
“ * * * that nothing in this chapter -shall be held or construed to authorize any naturopathic physician licensed hereunder to practice materia medica or surgery or chiropractic, nor shall the provisions-of this law in any manner apply to or affect the practice of osteopathy, chiropractic, Christian science, or any other treatment authorized and provided for by law for the cure or prevention of disease and ailments.”
It is, therefore, obvious that the statute recognizes a clear distinction between various classes of practitioners. *352 Certainly,' the appellant in the exercise of a sound discretion may recognize such a distinction. One case may. require the services of an orthopedic surgeon; another a pediatrician; another a brain specialist; a cancer specialist; a stomach specialist; or an eye, ear, nose and throat specialist.
Even a Circuit Judge in the appointment of a physician' in a personal injury case is not required to appoint any physician who may be available, but he exercises a discretion in selecting one best fitted for the particular case. In a capital case where the defense may be insanity, the Judge does not appoint someone to make an examination simply because he may be a physician, but he exercises ■ a discretion and employs a specialist in that field. Even a physician generally cannot qualify as an expert witness in the treatment of all human ills and ailments. He generally qualifies as an expert in a párticular field. ■
If a certificate is required by the appellant as to the nature of some mental or physical disability of a recipient, before granting relief, the appellant has the right to exercise a sound and reasonable discretion in selecting the physician whose certificate the appellant will accept.
It has not been made to appear that the Welfare Act gave to the appellee, and others similarly situated, any rights under the said Act. Whatever payments may be made are made to the recipient, that .is, the aged or dependent children, and not to the appellee. These payments may be based upon a budget for each particular individual whereby the appellant in the exercise of a sound discretion determines the need of each individual. The fact that such budget may contain an item for medical, dental, or surgical services paid to the recipient does not vest in the appellee any right to receive a portion of the money which may be paid to the recipient. If there is any complaint to be made with reference to any particular item set forth in the budget for the individual recipient, that complaint should be made by the recipient and not by the grocer, the butcher, the clothier, the landlord, the naturopath, surgeon, dentist or the physician, or any other person who may have a claim against the recipient for services rendered, for food, clothing, or shelter furnished.
The appellee has not shown that he has any right to maintain this action.
Reversed, with directions to set aside the final decree and to dismiss the bill of complaint.
ROBERTS, C. J., SEBRING, J., and PATTERSON, Associate Justice, concur.
TERRELL, THOMAS and DREW, JJ., dissent.