ERVIN, Judge.
Goldberg and L. & N. Properties, Ltd., appeal a final judgment entered after trial by jury finding that appellants had violated the Fair Labor Standards Act of 1938, as amended, by failing to pay their employee, Graser, overtime pay and minimum wages.[1] Graser cross-appeals from the trial court’s denial of his petition for liquidated damages following the entry of the verdict in his favor.
Graser was hired by L. & N. as a maintenance man for an apartment complex in Jacksonville, Florida, known as Lancelot Manor Apartments. His employment commenced on March 8, 1974, and continued until October 27, 1976. He was instructed to work 40 hours per week, five days a week, from 9 a. m. to 5 p.m.; however, he was aware that his duties would require *772 him to be on call at all hours of the night. He testified his overtime work consisted of repairing the apartments, maintaining the swimming pool and closing the apartment clubhouse at night. Neither Graser nor L. & N. kept records as to the number of hours of Graser’s employment. Graser estimated that he worked approximately 55 hours per week from the middle of June, 1974 until the termination of his employment in 1976.
L. & N. argues first that the trial court erred in finding the Lancelot Manor Apartments was an enterprise which was subject to the requirements of the Act. An enterprise is defined by 29 U.S.C. § 203(s), as amended effective May 1, 1974, as follows:
“Enterprise engaged in commerce or in the production of goods for commerce” means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person .
The enterprise must also have an annual gross volume of sales of not less than $250,-000. Title 29 U.S.C. § 203(s)(l). There was no controversy that the business’s gross volume of sales exceeded $250,000. Additionally, there was no evidence showing that Graser was engaged in commerce or in the production of goods for commerce. The only issue is whether the apartment complex was an enterprise engaged in commerce or in the production of goods for commerce.
L. & N. concedes that two or more of its employees handled goods and materials which were originally manufactured at locations outside of Florida and were purchased by L. & N. within the state. It argues, however, it is not subject to the Act because § 203(i) excludes from coverage “goods after their delivery into the actual physical possession of the ultimate consumer . . other than a producer, manufacturer, or processor thereof.” L. & N. argues that it was the ultimate consumer of the goods which were handled by its employees, and that they were used by L. & N. in the normal maintenance of the apartment complex. L. & N. notes that § 203(i) also defines goods as including “articles or subjects of commerce of any character .therefore, the definition encompasses the word “materials” as used in § 203(s), defining enterprise, so that the words “goods” and “materials” are synonymous. Such being the case, it concludes, its operations are not subject to coverage under the Act.
Since we are asked to interpret a federal statute, we turn to expressions of congressional intent and federal cases interpreting the statute as an aid to seeking a solution to the question whether the apartment’s activities are subject to the Act’s requirement. The Senate Report of the Fair Labor Standards Amendments of 1974, Sen.Rep.No.93— 690, 93rd Cong., 2nd Sess., explains why § 203(s) was amended by, adding the word “materials”:
The bill also adds the words “or materials” after the word “goods” to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer’s business, as e. g., the soap used by a laundry. The “handling” language was added based on a retrospective view of the effect of substandard wage conditions, (e.s.)
The amendment and the interpretative language in the Senate Report were extensively considered in Brennan v. Jaffey, 380 F.Supp. 373 (D.Del.1974). The federal district court was asked to decide whether an apartment complex’s activities made it an enterprise so that coverage would be extended to the apartment’s employees who handled supplies which were ultimately consumed there. The court, after comparing the language of the amendment with that of the Senate Report, concluded:
The 1974 Report, . . ., is of considerable significance in ascertaining what was intended when the amendment became effective May 1, 1974, by inserting the word “materials” in § 203(s). It clearly discloses a legislative purpose to *773 make the minimum wage, overtime and record keeping provisions of the Act applicable to employers, such as the defendant, after its effective date. Id. at 379.
The rationale of Brennan v. Jaffey, supra, was recently followed in Marshall v. Whitehead, No. 75-6 Cir.Ft.My. (M.D.Fla., May 19,1978), where it was stated:
It appears clear to the Court that, regardless of the conflict which has arisen among the courts on the question of enterprise coverage, prior to the 1974 amendments to the Act, based solely upon the handling by employees of articles used in an employer’s own business which have traveled interstate, there almost certainly can be no question as to the intended scope of Section 3(s) so as to include such employees after the passage of the said amendments. (Footnotes omitted.)
We conclude that L. & N.’s apartment activities were covered by Section 203(s), as amended.
Finally, L. & N. relies upon a per curiam affirmance decision of this court in Jacqueline Graser v. Goldberg, No. GG-430 (Fla. 1st DCA, May 19, 1978), which affirmed a directed verdict entered in favor of defendant Robert Goldberg, doing business as L. & N. Property Associates. Jacqueline Graser, as her husband, Karl Graser here, sought compensation for overtime employment at the same apartment complex where Graser claimed additional compensation. L. & N.’s reliance upon a per curiam decision has no precedential value in another case. A per curiam af-firmance without opinion does not bind the appellate court in another case to accept the conclusion of law on which the decision of the lower court was based. State Dep’t of Public Welfare v. Melser, 69 So.2d 347 (Fla.1954).
We have, nevertheless, examined appellant’s appendix of the record in the Jacqueline Graser case and find the lower court granted Goldberg’s motion for directed verdict on the theory that the apartment complex was not an enterprise as defined by the Act. The arguments both for and against the motion for directed verdict did not cite any opinions interpreting the effect of 29 U.S.C. § 203(s) subsequent to its amendment on May 1, 1974. It is conceivable that if the lower court had been cited the same cases now relied upon by Graser, it would not have reached the same conclusion. At any event, the lower court’s decision in the other case and our later per curiam affirmance of it does not now resolve the issues before us. We are therefore not bound by that decision.
Finally L. & N. argues that the trial court erred in finding Graser met his burden of proof that he had performed work justifying the amount of overtime pay which he alleged he was entitled. The only evidence supporting Graser’s contention that he worked more than 40 hours per week was the testimony of Graser and his wife. The Act does not require that an employee keep records of his hours of employment. Section 211(c), however, mandates the employer to do so. L. & N.’s argument that the employee’s testimony lacks a competent and substantial foundation is without merit. It has been repeatedly held that when an employer fails to maintain employment records, testimony by the employee as to the amount of overtime is appropriate. Shultz v. Hinojosa, 432 F.2d 259 (5th Cir. 1970); Wirtz v. McClure, 333 F.2d 45 (10th Cir. 1964); Mumbower v. Callicott, 526 F.2d 1183 (8th Cir. 1975). We find no error in that regard.
We also conclude the trial court did not err in denying the employee’s petition for liquidated damages. Section 16(b) of the Act (29 U.S.C. § 216(b)) provides that employers who violate the Act shall be liable to the employee for the amount of “unpaid overtime compensation, . . . and an additional equal amount as liquidated damages.” An employer, however, may be excused from the payment of liquidated damages if he shows “that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair *774 Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages . . Section 11 of the Portal-To-Portal Act (29 U.S.C. § 260). However, the latter statute has been interpreted as requiring, before the court’s discretion may be invoked, the employer to sustain the burden of persuading the court by proof that his failure to obey the statute was both in good faith and based upon such reasonable grounds that would make it unfair to impose upon him more than a compensatory verdict. McGlanahan v. Mathews, 440 F.2d 320 (6th Cir. 1971); Rothman v. Publicker Industries, Inc., 201 F.2d 618 (3d Cir. 1953); Wright v. Carrigg, 275 F.2d 448 (4th Cir. 1960).
We conclude that L. & N. sustained its burden. The employer testified it would have paid Graser overtime if he had brought to its attention the fact that he was working in excess of 40 hours a week. The first time, however, that L. & N. was informed that Graser was claiming overtime pay was when the complaint was filed.
Moreover, it appears that reasonable grounds existed for the employer’s belief it was not violating the Act. At the time Graser was employed by L. & N., the law was unclear as to the applicability of the Fair Labor Standards Act of 1938, as amended, to apartment complexes. The uncertainty in the law prior to the amendment was well reflected by the Senate report on the Fair Labor Standard Amendments of 1974, in which it listed a large number of conflicting decisions as to whether coverage extended to the handling of goods consumed in an employer’s business. The amendment went into effect on May 1, 1974, after the commencement of Graser’s employment with L. & N., and thereafter applied to Graser’s employment until his termination on October 27,1976. Nevertheless, the paucity of decisions later interpreting the amendment mitigates the employer’s liability.
W e agree with the lower court, in view of the uncertainty of the law and the employee’s tardy request for overtime compensation, that liquidated damages are not merited because the employer’s non-compliance was both reasonable and in good faith. To the same effect, generally, see Kelly v. Ballard, 298 F.Supp. 1301 (S.D.Cal.1969). Therefore the discretion of the trial court was appropriately invoked. Cf. McClanahan v. Mathews, supra.
Graser’s motion for attorney fees for defense of the appeal is granted and the cause-remanded to the trial court for the-entry of an appropriate award. His'request for fees in his cross appeal is"'denied.
AFFIRMED.
MILLS, Acting C. J., and MASON, ERNEST E., Associate Judge, concur.

. Either state or federal courts have jurisdiction to consider violations of the minimum wage and maximum hours sections of the Act. See § 16(b) (29 U.S.C. § 216(b)).